IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CINDY LYNN RIDENOUR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-23-438- SM |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Cindy Lynn Ridenour (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g); 1383(c)(3). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 7, 8.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge's (ALJ) residual functional capacity[2] (RFC) assessment lacks the correct

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

consideration of her nonsevere impairments and her reasons for not complying with certain medical instructions. Doc. 9, at 10-22. After a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court reverses the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff "retains the capacity to perform an alternate work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

    **C.**    **Relevant findings.**

        **1.**    **ALJ's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 18-26; *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the "five-step framework"). The ALJ found Plaintiff:

    (1)    had not engaged in substantial gainful activity since June 26, 2020, the alleged onset date;

    (2)    had the severe medically determinable impairments of post-traumatic stress disorder, congenital heart disease, and hyperlipidemia;

    (3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

    (4)    had the RFC to perform light work with the following limitations: she could occasionally stoop; would be limited to simple tasks with routine supervision; could relate to others on a superficial work basis; and can adapt to a work situation with the above limitations;

    (5)    was unable to perform her past relevant work;

    (6)    could perform jobs that exist in significant numbers in the national economy such as small products assembler, marker, and laundry sorter; and so,

    (7)    had not been under a disability from June 26, 2020 through October 28, 2022.

See AR 19-26.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)). The Court "remain[s] mindful that '[e]vidence is not substantial if it is overwhelmed by other evidence in the

4

record.'" *Wall*, 561 F.3d at 1052 (alteration in original) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)).

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### 1. The ALJ erred in his consideration of Plaintiff's headaches.

In considering Plaintiff's allegations about her headaches, the ALJ concluded: "The claimant alleges dizziness and headaches as disabling

5

symptoms. However, there is no indication in the medical evidence of record of any significant complaints regarding these symptoms during the relevant period under consideration." AR 23. The ALJ recognized Plaintiff's testimony about her alleged "daily headaches," but discounted her consistency. *Id.* In so doing, the ALJ listed Plaintiff's daily activities, and her noncompliance with treatment. *Id.*

Plaintiff points out that in July 2019, she went to the emergency room because of a headache from the day before, accompanied by blurry vision. Doc. 9, at 12; AR 676. She received IV medications at the hospital. Doc. 9, at 12; AR 680. In November 2020, she reported intermittent headaches and blurry vision over a month, as well as episodes of syncope and dizziness when standing up. Doc. 9, at 12; AR 699. She visited a neurologist for these issues in March 2021. Doc. 9, at 12; AR 495-96. The neurologist diagnosed Plaintiff with chronic daily headaches and recommended Plaintiff undergo an EEG and brain MRI. Doc. 9, at 12; AR 496.

Plaintiff maintains that her headaches increased in frequency throughout 2022. She reported to the emergency room in May 2022, with left-sided weakness, headache, facial drooping, and slurred speech. Doc. 9, at 12; AR 1349, 1351, 1358. A hospital neurologist believed she suffered from either a migraine, a functional conversion disorder, or a small stroke. Doc. 9, at 12-

13; AR 1359. A week later, the headaches and weakness persisted, and she continued to report headaches in August 2022. Doc. 9, at 13; AR 1250, 1254, 1219. During the June visit, a treating nurse referred Plaintiff to another neurologist. Doc. 9, at 13; AR 1255. And the most recent medical evidence shows Plaintiff continues to report headaches. Doc. 9, at 13; AR 1594 (Oct. 2022). Finally, at the October 7, 2022 administrative hearing, Plaintiff reported continued daily headaches. AR 52, 59.

The Commissioner maintains the ALJ properly accounted for Plaintiff's headaches by limiting her to simple tasks. Doc. 11, at 5. She also notes that Plaintiff did not claim headaches as a basis of disability. *Id.* at 4. The Commissioner acknowledges the ALJ did not cite any "particular records" when addressing Plaintiff's headaches. *Id.* at 5. She also argues that Plaintiff's failure to identify any additional functional limitations caused by her headaches is fatal to her claim. *Id.* at 4.

An ALJ must "consider all of the claimant's medically determinable impairments," "singly and in combination with [the claimant's] other impairments." *Salazar v. Barnhart*, 468 F.3d 615, 621-22 (10th Cir. 2006); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable

impairments, whether severe or not severe." (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). The regulations "do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065. And "the failure to consider all of the impairments is reversible error." *Salazar*, 468 F.3d at 621.

The ALJ discounted Plaintiff's complaints of headaches as not "significant," and thus did not consider the effects of her migraines or headaches at step four. AR 23. This was error. *See, e.g.*, *Allman*, 813 F.3d at 1330 (stating "an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC" and finding "the ALJ's references reflect[ed] thoughtful consideration of [claimant's] headaches").

As noted, Plaintiff's sought treatment from the emergency room for headache-related symptoms. She also was seen by a neurologist more than once. While Plaintiff's complaints about her headaches may have been "made on only a few occasions, and in medical records that appear toward the end of the adjudicated period," they were significant enough to require an analysis of their impact on Plaintiff's RFC. *See Lauer v. Comm'r, SSA*, 752 F. App'x 665, 667 (10th Cir. 2018) (finding reversible error where the plaintiff had complained more than once that her "alleged headaches occurred on a frequent basis, sometime several times a week," but the ALJ had not accounted for "[t]he

8

effect of these symptoms" "in [his] RFC assessment"); *see also Malik v. Colvin*, 2014 WL 1257070, at *5 (D. Colo. Mar. 27, 2014) ("Many federal district courts recognize that there are no objective medical tests for evaluating migraines/headaches, and hold that there is no requirement that an impairment such as migraines be proven through objective medical findings."). But, beyond the general dismissal of Plaintiff's headache complaints quoted above, AR 23, the ALJ never mentioned her relevant symptoms, her emergency room visits, her diagnosis as to chronic headaches, or her testimony and continued complaints. The Court determines remand is necessary so that the Commissioner can further evaluate Plaintiff's headache complaints.

### 2. The ALJ erred when he failed to properly consider possible reasons for Plaintiff's treatment noncompliance.

Next, Plaintiff challenges the ALJ's evaluation of her symptoms. She alleges the ALJ relied on her noncompliance with her medication regimen to discount her symptoms, but he failed to supply any rationale supporting his conclusion. Doc. 9, at 17-18. After finding no "significant complaints" in the medical record as to Plaintiff's headaches, the ALJ stated:

> It is also noted that the claimant has been noncompliant with treatment. The regulations state that in order to be awarded benefits an individual must follow treatment prescribed by his physician if this treatment can restore the ability to work. 20 CFR § 416.930 and 404.1530.

9

AR 23.

"An ALJ may properly consider a claimant's failure to follow prescribed treatment when evaluating the intensity and persistence of symptoms." *Allred v. Comm'r, SSA*, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023). But an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record" because "the individual fails to follow prescribed treatment that might improve symptoms" "without considering possible reasons" why the individual may not have sought or complied with treatment, such as an inability to afford it or the impact of side effects. SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017).

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

*Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

The Commissioner acknowledges that "the ALJ should have considered any possible explanations for Plaintiff's failure to take her medication," but argues that "noncompliance was just one of several factors the ALJ considered." Doc. 11, at 6 (citing various out-of-Circuit district court cases). She argues that the ALJ considered her working part-time, engaging in arts and

crafts and assisting with schoolwork with her children, and managing her personal care. *Id.* at 7. The Commissioner also looks to the prior administrative medical findings of state agency medical and psychological consultants for support. *Id.* at 7-8.

Plaintiff argues there are but three mentions of noncompliance in the large medical record, one noting the "multiple physical health complications" that resulted as side effects. Doc. 9, at 18-19 (citing AR 1507). The ALJ concluded that Plaintiff "admitted that medication treatment keeps her functional" and that "[s]he alleged fatigue and problems eating as medication side effects." AR 23. But the ALJ did not mention the need for a slow introduction of medications because of "physical health complications," *see id.* at 1507. Nor did he acknowledge the various mentions of concerns of the side effects. *See e.g.*, *id.* at 52, 59 (Plaintiff's testimony that her doctor said her daily headaches might result from medications); 53 (Plaintiff testifying about losing thirty pounds); 495 (reporting weight loss, poor appetite, and fatigue), 519 ("weight loss, unintentional"), 640 ("Abnormal weight loss" and "The weight loss is concerning."), 642 ("Abnormal weight loss"), 771 ("weight loss, fatigue").

The Court determines "the ALJ did not sufficiently consider the possible reasons behind [Plaintiff's] intermittent noncompliance." *Allred*, 2023 WL

3035196, at *4. The ALJ's failure to properly consider possible reasons for the noncompliance requires remand.

### III. Conclusion.

Based on the above, the Court **REVERSES** and **REMANDS** the Commissioner's decision.

**ENTERED** this 30th day of November, 2023.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE